**Tim SAMM, Appellant–Plaintiff,**

v.

**GREAT DANE TRAILERS,**
**Appellee–Defendant,**

No. 84A01–9810–CV–381.

Court of Appeals of Indiana.

Aug. 26, 1999.

---

Eric A. Frey, Terre Haute, Indiana, Attorney for Appellant.

David W. Sullivan, Scott Craig, Cox, Zwerner, Gambill & Sullivan, Terre Haute, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Tim Samm (Samm), appeals the trial court's dismissal of his complaint for retaliatory discharge and defamation against Appellee, Great Dane Trailers (Great Dane).

We reverse.

Samm presents two issues for consideration:

(1) Whether the trial court erred in retroactively applying I.C. 22–3–4–12.1[1] to Samm's termination of employment; and

(2) Whether the trial court improperly granted Great Dane's motion to dismiss for lack of subject matter jurisdiction.

On July 25, 1997, Samm filed a complaint in Vigo Superior Court asserting the following: Sam began his employment with Great Dane on April 12, 1994. On March 27, 1997, he injured his lower groin area while on the job. Samm went to his family physician on March 31, 1997, and was advised that he had a hernia which required surgery. He was referred to a general surgeon for evaluation. A company physician subsequently confirmed the diagnosis.

Samm requested worker's compensation benefits.[2] Great Dane responded that it would have to investigate the matter. Samm met with a company representative on April 3, 1997. He was advised that his injury was not work-related and that he was being terminated for making a false claim for worker's compensation benefits. Samm was officially terminated on April 4, 1997. Between April 4 and 11, 1997, Great Dane informed the surgeon that it would pay Samm's surgery cost. On April 14, 1997, Samm underwent surgery. However, Great Dane refused to cover Samm's medical expenses.

In his complaint, Samm charged:

"12. That the defendant falsely accused the Plaintiff of a criminal act of fraud, which accusation constitutes libel per se. These accusations held the plaintiff up to ridicule in his job or profession and have precluded plaintiff from obtaining other gainful employment.

13. That the discharge of the Plaintiff . . . was solely in direct retaliation for the Plaintiff's assertion of his rights and remedies under the Indiana Work[er]'s Compensation Act and the discharge was intended to punish the Plaintiff for pursuing his remedies under appropriate Indiana law." Record at 9–10.

Samm sought both compensatory and punitive damages. The complaint requested a jury trial.

1. (Burns Code Ed. Repl.1997 & Supp.1998).

2. *See generally* I.C. 22–3–1–1 to 22–3–12–5 (Burns Code Ed. Repl.1997 & Supp.1998)(statutes governing worker's compensation benefits).

Great Dane filed its answer on August 20, 1997. The company filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Ind. Trial Rule 12(B)(1) and a memorandum of law in support thereof on April 21, 1998.

On September 21, 1998, the trial court entered an order granting the motion to dismiss. The order cited I.C. 22–3–4–12.1(a), which provides:

"The worker's compensation board, upon hearing a claim for benefits, has the exclusive jurisdiction to determine whether the employer, the employer's worker's compensation administrator, or the worker's compensation insurance carrier has acted with a lack of diligence, in bad faith, or has committed an independent tort in adjusting or settling the claim for compensation."

In dismissing the action, the trial court stated that Samm's complaint alleged "bad faith and an independent tort" against Great Dane. Record at 95. The trial court reasoned, "[t]hese matters are clearly under the purview of I.C. 22–3–4–12.[1], which provides a remedy to said offenses, if proven. Likewise, the question of the appropriate jurisdiction of the body to hear these complaints and the remedies available are procedural.... [E]xclusive jurisdiction over these claims belong[s] to the Work[er]'s Compensation Board." Record at 95.

### I. *Retroactive Application*

■■■■ Samm was terminated on April 4, 1997, approximately three months prior to the July 1, 1997 effective date of I.C. 22–3–4–12.1. Therefore, he argues, the statute's provisions do not apply to his complaint, which he filed on July 25, 1997—a date more than three weeks after the statute became effective. The general rule is that, absent strong and compelling reasons to do otherwise, statutes will normally be given prospective application. *Sack v. Estate of Hubbell* (1993) Ind.App., 613 N.E.2d 868, 869. Statutes ad-

dressing merely procedural or remedial matters may be applied retroactively, although such application is not required. *Id.* at 869–70. If new legislation only changes a mode of procedure in the law while providing a remedy substantially similar to the existing one and does not create or take away vested rights, it will be applied to all cases pending at and subsequent to its effective date. *Estate of Robinson v. C & I Leasing, Inc.* (1998) Ind.App., 691 N.E.2d 474, 476, *trans. denied.*

This court recently considered retroactive application of I.C. 22–3–4–12.1 in *Borgman v. State Farm Ins. Co.,* (1999) Ind.App., 713 N.E.2d 851. In *Borgman,* the employee on July 22, 1998, filed a complaint for damages alleging that the employer and its insurer had wrongfully denied her claim for worker's compensation benefits for approximately eighteen months. She also contended that the insurer had acted negligently and in bad faith. Holding that the employee's claims fell within the exclusive jurisdiction [3] of the Worker's Compensation Board (the Board) and that I.C. 22–3–4–12.1 did not violate the open courts provision of the Indiana Constitution,[4] we noted that, "the statute is procedural and merely sets forth the proper forum for claims alleging lack of diligence, bad faith or independent torts on the part of the employer, their worker's compensation administrator and the insurance carrier." *Id.* 713 N.E.2d at 855.1 (citing *Estate of Robinson, supra,* 691 N.E.2d at 476).

As in *Borgman,* we conclude that I.C. 22–3–4–12.1 is procedural. It neither creates nor takes away vested rights of an injured employee. Rather, it establishes the proper forum for bringing an injured employee's claims for lack of diligence, bad faith, or an independent tort committed while adjusting or settling benefit claims against an employer, its worker's compensation administrator, or the worker's compensation insurance car-

---

3. Unlike the instant case, where Samm was terminated by Great Dane, the plaintiff-employee in *Borgman* resigned her employment, nor was there a claim of defamation.

4. Art. I, § 12 provides: "All courts shall be open; and every person, for injury done to him and his

person, property or reputation, shall have remedy by due course of law. Justice shall be administered freely and without purchase; completely, and without denial; speedily, and without delay."

rier. Thus, retroactive application of the statute was not inappropriate.

## II. *Motion to Dismiss*

■ The trial court dismissed Samm's complaint for lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. *Sons v. City of Crown Point* (1998) Ind.App., 691 N.E.2d 1237, 1239. When determining whether a court has subject matter jurisdiction, the relevant question is whether the type of claim which the plaintiff advances falls within the general scope of the authority conferred upon such court by the constitution or by statute. *Dubois County Office of Family and Children v. Adams* (1996) Ind.App., 671 N.E.2d 202, 203. When ruling upon the motion, the trial court may weigh evidence and resolve factual disputes. *Walters v. Modern Aluminum* (1998) Ind.App., 699 N.E.2d 671, 673, *trans. denied.* Further, it may consider the pleadings, affidavits, and any other evidence submitted. *Id.*

Our inquiry involves two matters of statutory interpretation. First, we must ascertain whether the legislature intended the phrase "adjusting or settling" to include an employer's tortious actions occurring after it has denied an employee's request for worker's compensation benefits. Second, we must determine whether the legislature intended allegations such as in Samm's complaint, i.e. retaliatory discharge and defamation, to constitute independent torts within the meaning of the I.C. 22–3–4–12.1.

■ However, we may not embark upon an interpretive analysis unless the language of the statute is ambiguous. *State v. CSX Transp., Inc.* (1996) Ind.App., 673 N.E.2d 517, 519. An ambiguous statute is one which is reasonably susceptible to more than one interpretation. *Id.* I.C. 22–3–4–12.1 grants the Board exclusive jurisdiction to determine whether an employer "committed an independent tort in adjusting or settling the claim for compensation." No statute defines the terms "adjusting or settling" or "independent tort." They are reasonably subject to different interpretations which either include or exclude one or both allegations advanced by Samm in his complaint. We will separately examine both claims.

### A. *Retaliatory Discharge*

■ According to the complaint, after Samm requested worker's compensation benefits and the company investigated his claim, Great Dane on April 3, 1997 informed Samm, "that this was not a work-related injury and that plaintiff was being terminated for making a false claim against the defendant. Plaintiff was officially terminated on April 4, 1997." Record at 9. Samm's termination followed immediately upon the heels of Great Dane's investigation and decision to deny the request for worker's compensation benefits. Although related, the termination was separate and independent of Great Dane's denial of benefits. The denial of benefits constituted the final step of the company's procedure for "adjusting or settling" a worker's compensation claim. The complaint does not allege that Great Dane in some fashion provided for an internal appeal of the denial. We cannot say that the legislature intended the "adjusting or settling" process to include the discharge of the claimant after the employer has finally denied his request for benefits. Therefore, Samm's claim for retaliatory discharge was properly before the trial court.

It is not questioned that an action for retaliatory discharge sounds in tort. *See, e.g., Haas Carriage, Inc., v. Berna* (1995) Ind.App., 651 N.E.2d 284, 289 ("Retaliatory discharge of an employee at-will gives rise to a cause of action in tort, rather than an action for breach of contract."). However, we do not believe that such claim, as alleged by Samm, qualifies as an "independent tort" as that term is used in I.C. 22–3–4–12.1. Instead, we conclude that the legislature, by enacting the statute, did not intend to abrogate our Supreme Court's decision in *Frampton v. Central Ind. Gas Co.* (1973) 260 Ind. 249, 297 N.E.2d 425. In *Frampton*, an employee claimed that she had been discharged in retaliation for filing a worker's compensation claim. The employee sought actual and punitive damages. Her complaint was dismissed by the trial court for failure to state a

claim upon which relief can be granted, pursuant to T.R. 12(B)(6).

Reversing the dismissal, the Indiana Supreme Court first analyzed the policy supporting worker's compensation benefits, observing:

> "Work[er]'s compensation is for the benefit of the employee. Accordingly, it is well-established that the [Worker's Compensation] Act be liberally construed in favor of the employee so as to not negate the Act's humane purposes.
>
> The Act creates a *duty* in the employer to compensate employees for work-related injuries (through insurance) and a *right* in the employee to receive such compensation. But in order for the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing work[er]'s compensation claims, a most important public policy will be undermined. The fear of being discharged would have a deleterious effect on the exercise of a statutory right." *Id.* at 427 (citations omitted)(emphasis in original).

Next, the Court stated, "[s]ince the Act embraces such a fundamental, well-defined and well-established policy, strict employer adherence is required." *Id.* Citing I.C. 22–3–2–15,[5] which provided that no "device" shall operate to relieve an employer in whole or in part from its obligations under the Act, the Court in *Frampton* equated the threat of discharge with such a prohibited "device." *Id.* at 428. In so doing, the majority reasoned, "[o]nce an employee knows he is remediless if retaliatorily discharged, he is unlikely to file a claim. . . . Upholding retaliatory discharge opens the door to coercion and other duress-provoking acts." *Id.* The Court concluded by recognizing a claim for retaliatory discharge where an employee alleges that she has been terminated for filing a claim for worker's compensation benefits. *Id.* It further held that, "such a discharge would constitute an intentional, wrongful act on the part of the employer for which the injured employee is entitled to be *fully compensated* in damages." *Id.* (emphasis supplied).

The employment-at-will doctrine is "deeply rooted in Indiana jurisprudence . . . [and] has only rarely been limited." *Jarboe v. Landmark Community Newspapers of Ind.* (1994) Ind., 644 N.E.2d 118, 121, *reh'g denied.* "The essence of the employment-at-will doctrine is that an employment contract of indefinite duration is presumptively terminable at the will of either party." *Id.* The decision in *Frampton* acknowledged this general rule. *Frampton, supra,* 297 N.E.2d at 428. However, the opinion also recognized an exception to the employment-at-will doctrine "when an employee is discharged solely for exercising a statutorily conferred right. . . ."[6] *Id.*

*Frampton* has been consistently upheld and applied in cases where an employee alleges that she has been discharged in retaliation for exercising her right to claim worker's compensation benefits. In *Pepkowski v. Life of Ind. Ins. Co.* (1989) Ind., 535 N.E.2d 1164, 1167–68, the Indiana Supreme Court determined that a grant of summary judgment which dismissed the employee's retaliatory discharge claim was improper where the employee was terminated six months after filing a claim for worker's compensation benefits and conflicting evidence existed as to the reason for her discharge. This court in *Peru Daily Tribune v. Shuler* (1989) Ind.App., 544 N.E.2d 560, 563–64 determined that substantial evidence supported the employee's claim for retaliatory discharge where the employee injured her knee on the job, filed a claim for worker's compensation benefits, scheduled the necessary surgery, told her employer that she would be off work for surgery, and was then discharged with no cause given and

5. (Burns Code Ed. Repl.1997). The provision as cited by the Court in *Frampton* is substantially similar to its current version.

6. We have also recognized the exception where an employee is terminated for exercising a statutory duty expressing public policy, e.g., refusing to violate a law. *Walt's Drive–A–Way Service, Inc. v. Powell* (1994) Ind.App., 638 N.E.2d 857, 858 (citing *McClanahan v. Remington Freight Lines, Inc.* (1988) Ind., 517 N.E.2d 390).

with no records having been produced indicating that her work performance had been substandard.

We again considered a retaliatory discharge claim in *Stivers v. Stevens* (1991) Ind.App., 581 N.E.2d 1253 (Barteau, J., dissenting), *as clarified on denial of reh'g, trans. denied.* In *Stivers*, the employee informed her employer that she had begun experiencing numbness and tingling in her hands and fingers, mentioned that extensive treatment would be necessary, and told the employer that she intended to file a claim for worker's compensation benefits. At the conclusion of her discussion with the employer, she was terminated. She filed a complaint alleging that she was terminated because of her expressed intention to file a claim for worker's compensation benefits. Affirming the judgment in favor of the employee, we noted:

> "Thus, one of the reasons for the *Frampton* rule is to prevent the employer from terminating the employment of one employee in a manner which sends a message to other employees that they will lose their job if they exercise their right to worker's compensation benefits. Terminating an employee for filing a claim obviously has a deleterious effect on the exercise of this important, statutory right. The discharge of an employee merely for suggesting she might file a claim has an even stronger deleterious effect." *Id.* at 1254.

The case law reflects a clear, definite policy in this State supporting an employee's right to file a claim for worker's compensation benefits and to be free from coercion or threats of termination in exercising that right. The right has been consistently protected and enforced by Indiana courts. We presume that the legislature was aware of this policy in passing I.C. 22–3–4–12.1 and intended no changes in the interpretation of such policy beyond what it declared in express terms or by unmistakable implication. *United Farm Bureau Mut. Ins. Co. v. Steele* (1993) Ind.App., 622 N.E.2d 557, 560 (observing that legislature's continual failure to express an intent to void household exclusion clauses constituted continuing legislative acquiescence in validity of such clauses), *reh'g denied.* As previously noted, the statute does not define the term "independent tort." It makes no express declaration that the term includes retaliatory discharge where an employee claims that she was terminated for exercising her statutory right to file for worker's compensation benefits.

Furthermore, I.C. 22–3–4–12.1(b) provides that, if an independent tort is proved, the Board may only "award" the claimant a sum no greater than $20,000, "depending upon the degree of culpability and the actual damages sustained." Given this limit on recovery for an "intentional tort," the statute is inconsistent with our Supreme Court's conclusion in *Frampton, supra,* 297 N.E.2d at 428, that the wrongfully discharged employee is entitled to be "fully compensated." [7] An injured employee discharged for making a worker's compensation claim may incur substantially more than $20,000 in damages. We conclude that, if the legislature had intended to place matters of retaliatory discharge within the Board's exclusive jurisdiction and thereby eliminate the availability of a comprehensive remedy in a separate civil action, it would have specifically done so in express terms and not by making a generalized reference to intentional torts which, if proven, are compensable only by a limited award.[8]

### B. Defamation.

Defamation is a tort action. *See Long v. Durnil* (1998) Ind.App., 697 N.E.2d 100, 105 (observing that United States Supreme Court has held that defamation is a tort actionable under the laws of most states but is not a constitutional deprivation), *trans. denied; see also Mart v. Hess* (1998) Ind. App., 703 N.E.2d 190, 192 ("In a defamation action, the place of the tort is generally considered the place of publication, i.e., where the defamatory material is communi-

---

7. We noted in *Haas Carriage, supra,* 651 N.E.2d at 289 that "[t]ort damages are designed to compensate the injured plaintiff and place him in the same financial position in which he would have been had the tort not occurred." (citing 22 AM. JUR.2D *Damages* § 26 (1988)).

8. It should be readily apparent that our opinion does not purport to categorize the discharge as a retaliatory discharge in fact. The facts may well disclose that the discharge was not for filing the worker's compensation claim, but rather was for falsifying the claim.

cated to a third party."). To demonstrate an action for defamation, a plaintiff must show a communication with four elements: (1) defamatory imputation; (2) malice; (3) publication; and (4) damages. *Van Eaton v. Fink* (1998) Ind.App., 697 N.E.2d 490, 494, *reh'g denied.* We first note that defamation is an intentional tort within the meaning of I.C. 22–3–4–12.1. Unlike a claim of retaliatory discharge as discussed in the *Frampton* decision and its progeny, there is no "well-defined and well-established" public policy in Indiana which, without express statutory language stating otherwise, dictates that a separate civil action remain available outside of the Board's exclusive jurisdiction for employees making defamation claims against their former employers.

▮ It is not clear, though, that Great Dane's alleged defamatory actions were part of its procedure for "adjusting or settling" Samm's claim for worker's compensation benefits. The complaint alleged that Great Dane told Samm that his injury was not work-related and that Samm "was being terminated for making a false claim against the defendant." Record at 9. According to Samm, the accusation of fraud constituted defamation which subjected him to ridicule on the job and within his profession and which prevented him from finding other gainful employment.

One cannot tell from reading the complaint whether the accusation of fraud was separate and independent from Great Dane's process for "adjusting or settling" Samm's request for benefits. If Samm contends that the fraud accusation was made within the context of the benefits denial, i.e. that Great Dane denied the request not only because it was not work-related but also because it was fraudulent, the complaint would seem to allege an independent tort which falls within the exclusive jurisdiction of the Board. However, if Samm's request was denied because it was not a work-related injury and he was subsequently terminated for filing a false claim, the defamatory action would appear to be related to but separate and inde-

pendent from Great Dane's procedure for "adjusting or settling" a request for worker's compensation benefits and, thus, not fall within the Board's exclusive jurisdiction. What constituted the alleged "publication" element of defamation is important; a finding that the publication involved either the denial of benefits or Samm's termination would help indicate whether the alleged defamatory statements were or were not separate and independent of Great Dane's "adjusting or settling" of benefits. The trial court did not address this issue, and the record lacks information to resolve it. Therefore, we believe it was improper for the trial court to have granted the motion to dismiss for lack of subject matter jurisdiction on the issue of defamation.

In summation, we conclude that Samm's complaint for retaliatory discharge was separate and independent of Great Dane's procedures for "adjusting or settling" his claim for worker's compensation benefits, as that phrase is used in I.C. 22–3–4–12.1. Also, we find that the legislature, in enacting the statute, did not intend to include as an "independent tort" claims for retaliatory discharge, where such claims are based upon an employee's allegation that he or she was terminated for filing, or expressing an intent to file, a request for worker's compensation benefits. Further, we are unable to ascertain whether Samm's claim for defamation was part of, or separate and independent from, Great Dane's procedures for "adjusting or settling" Samm's claim for benefits, although we do conclude that defamation is an independent tort within the meaning of I.C. 22–3–4–12.1.[9]

The trial court's decision is reversed and the cause of action remanded for further proceedings not inconsistent with this opinion.

RILEY, J., and MATTINGLY, J., concur.

---

9. Samm's complaint may be read to allege that Great Dane's actions of retaliatory discharge and defamation demonstrated bad faith in addition to being independent torts. This does not alter our opinion. Under either interpretation, to be sub-

ject to the Board's exclusive jurisdiction, Great Dane's actions must be shown to have not been separate and independent of its procedure for adjusting or settling Samm's worker's compensation claim.