In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1588

DAVID GOETZKE,

Plaintiff-Appellant,

v.

FERRO CORPORATION and CRAWFORD & COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 99 C 398--James T. Moody, Judge.

ARGUED OCTOBER 22, 2001--DECIDED February 6, 2002

Before FLAUM, Chief Judge, and RIPPLE and WILLIAMS, Circuit Judges.

RIPPLE, Circuit Judge.  Ferro Corporation ("Ferro") terminated David Goetzke in August 1997 on the ground that he had defrauded it by exaggerating the extent of a work-related injury. In response to his termination, Mr. Goetzke filed this multi-count action in state court against Ferro and Crawford & Company ("Crawford"), a third-party administrator retained through Ferro's insurance carrier to administer worker's compensation claims brought by Ferro employees. In Count I, Mr. Goetzke alleged that Ferro had terminated him in retaliation for filing a worker's compensation claim. Count II of the complaint asserted that Crawford had tortiously interfered in Mr. Goetzke's employment relationship with Ferro. In Count III, Mr. Goetzke alleged that Ferro and Crawford had conspired to end his employment. After removal of the case to the federal system, the district court granted summary judgment to Ferro and Crawford on all counts. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

BACKGROUND

A.  Facts

   On August 11, 1996, Mr. Goetzke sustained a work-related injury to his lower back while employed at Kiel Chemical, a subsidiary of Ferro Corporation. Upon learning of Mr. Goetzke's injury, Ferro officials promptly filed a worker's compensation claim on his behalf. Over the next year, Mr. Goetzke spent extended periods on medical leave from Ferro as a result of the injury.

   In the weeks following the injury, the company placed Mr. Goetzke on "light duty"--assigning him jobs that did not require heavy lifting. Initially, the light duty required Mr. Goetzke to train a fellow employee. Although these sessions did not require any lifting, the assignment required Mr. Goetzke to stand and to walk for substantial portions of a twelve-hour shift. Roughly six days into this job, Mr. Goetzke informed his foreman that the length of the shifts and nature of the assignment aggravated his back injury. After Mr. Goetzke consulted with a physician, Ferro moved him from "light duty" to "sedentary duty"--a desk position. The new assignment required Mr. Goetzke to work only an eight-hour shift.

   During September and mid-October, Mr. Goetzke spent several days on medical leave. When Mr. Goetzke returned from an excused absence in October 1996, Steve Hartford, the company's safety training supervisor, contended that he smelled alcohol on Mr. Goetzke. Ferro therefore ordered Mr. Goetzke to undergo an alcohol test. The test, however, returned negative, and Ferro never pursued this incident any further.

   When his injury failed to improve, Mr. Goetzke returned to medical leave in November 1997. Over the next ten months, Mr. Goetzke clashed over his medical care with his doctors and Crawford. Mr. Goetzke particularly expressed frustration with Betty Foy, his case manager from Crawford. Mr. Goetzke believed that Foy often clandestinely overruled his physicians' prescribed course of treatment. As a case manager, Foy not only monitored Mr. Goetzke's treatment but also served as an information conduit between his

physicians and Crawford's claims adjustor. For instance, Foy accompanied Mr. Goetzke to his doctor's appointments. At each appointment, the responsibility fell to her to clarify with the physicians when Mr. Goetzke could return to work. In turn, she relayed this information to Crawford's adjustor and frequently to Ferro's Steve Hartford.

After physical therapy and injections failed to alleviate his pain, Mr. Goetzke underwent back surgery in March 1997. Foy informed Hartford that the recovery period for this procedure generally lasted three to four months. Two months into his recovery, Mr. Goetzke still complained of back pains to his physician. Specifically, during a doctor's appointment in May, Mr. Goetzke informed his physician that he had not been the same since he had sneezed and then heard a popping noise in his back soon after the surgery.

Upon receiving this information, Steve Hartford contacted Yadwiga Duncan, the Crawford claims adjustor handling Mr. Goetzke's file. Hartford believed that Mr. Goetzke was now exaggerating his symptoms and requested that Crawford hire an investigator to conduct surveillance of Mr. Goetzke. Pursuant to Hartford's request, Crawford employed an investigator who recorded Mr. Goetzke for two days in June 1997. The surveillance recorded Mr. Goetzke in a variety of activities including carrying and loading groceries into his vehicle. Crawford forwarded the tape to Hartford.

Meanwhile, concluding that Mr. Goetzke had reached a plateau in his recovery,/1 his physician, in consultation with Foy, scheduled a functional capacity evaluation ("FCE") for him. Conducted by an independent physician evaluator, the FCE is a battery of physical tests that assesses whether an injured employee is able to return to work and in what capacity. Hartford requested that an investigator conduct surveillance of Mr. Goetzke the day before the FCE. This surveillance, conducted in mid-July, captured Mr. Goetzke in a variety of activities. In particular, Mr. Goetzke worked on his car--leaning under the hood for several minutes. When the hood failed to close properly, Mr. Goetzke repeatedly pressed

down on it with both hands. The July tape also pictures Mr. Goetzke stretching across the front seat of his truck while his feet dangled awkwardly from the vehicle. The tape was forwarded to Ferro.

Soon after, the evaluator performed the FCE and sent the results to Mr. Goetzke, Ferro, Crawford and Betty Foy. The cover letter of the FCE stated "Mr. Goetzke did magnify his symptoms and his ability may be greater than what the data on the test indicates." Dep. V.3, Ex.4. In addition, the summary report noted thirteen inconsistencies between Mr. Goetzke's stated symptoms and his conduct during the evaluation. The evaluator assigned Mr. Goetzke a "6" on a scale of "0-7" on the Waddell Symptom Magnification Evaluation./2 One line of the full report, however, noted

[I]t is my opinion that [Mr. Goetzke] is UNABLE to perform work at the Medium level . . . . HOWEVER, I DO BELIEVE THE CLIENT IS MAGNIFYING THE PAIN SYMPTOMS IN AN UNCONSCIOUS EFFORT TO CONTROL THE ENVIRONMENT.

Dep. V.3, Ex.4. Although the report indicated that Mr. Goetzke was limited in the range of tasks he could perform, the FCE suggested that he be placed in a work hardening program to restore his capabilities. In conclusion, the report stated that "if [Mr. Goetzke] responds positively and improves quickly, I WOULD release the client to return to work sooner than the prescribed period." Dep. V.3, Ex.4 (emphasis in original). Accordingly, Mr. Goetzke's physician scheduled his patient for work hardening in mid-August.

In late July, approximately one week after receiving the results of the FCE, Mr. Goetzke filed an application for assistance with the Indiana Industrial Board./3 In this letter, Mr. Goetzke questioned the quality of the care that he received. More precisely, he alleged that Foy interfered with his doctor's orders and failed to stay abreast of his test results. Finally, Mr. Goetzke challenged the FCE as "biased" and "inaccurat[e]." R.26, Ex.M. The letter made no reference to Ferro. Crawford learned of Mr. Goetzke's application for assistance on August 13, 1997. It relayed this information to Hartford at Ferro.

After completing his work hardening in mid-August, Mr. Goetzke returned to work on light duty pursuant to his doctor's orders. However, upon Mr. Goetzke's arrival at work, Ferro officials informed him that he was being terminated for defrauding the company. According to company officials, the contents of the videotape and Mr. Goetzke's FCE had warranted this action.

B.  District Court Proceedings

1.

After his termination, Mr. Goetzke filed this action against Ferro and Crawford in Indiana state court. The complaint, which contained multiple counts, alleged that: Ferro discharged Mr. Goetzke in retaliation for filing a worker's compensation claim; Crawford had tortiously interfered in Mr. Goetzke's employment relationship with Ferro; and Ferro and Crawford had conspired to end Mr. Goetzke's employment. Invoking the diversity jurisdiction of the district court, Ferro and Crawford removed the case to the federal system.

Once before the district court, Ferro and Crawford moved for summary judgment on all counts. Ferro contended that, under Indiana law, Mr. Goetzke, an employee covered by a collective bargaining agreement, could not raise a retaliatory discharge claim. In the alternative, it submitted that Mr. Goetzke could neither demonstrate a causal connection between his termination and the filing of a worker's compensation claim nor demonstrate the pretextual nature of Ferro's proffered reason for his termination. With regard to the tortious interference claim, Crawford contended that, pursuant to an Indiana exclusivity statute, the district court lacked subject matter jurisdiction over this portion of Mr. Goetzke's complaint. In any event, according to Crawford, Mr. Goetzke had failed to establish the elements of the tort of tortious interference. Finally, both Ferro and Crawford maintained that the record contained no evidence that indicated a civil conspiracy.

2.

The district court entered summary

judgment for Ferro and Crawford on all counts. As a threshold matter, the district court rejected Ferro's contention that Mr. Goetzke could not maintain a retaliatory discharge action under Indiana law. Specifically, it concluded that a decision of the Court of Appeals of Indiana had expressly allowed employees covered by collective bargaining agreements to bring retaliatory discharge claims. Turning to the substantive aspects of Mr. Goetzke's complaint, the court found that he had failed to establish a causal nexus between his termination and the filing of his worker's compensation claim. According to the district court, Ferro had terminated Mr. Goetzke solely on its belief that he defrauded the company.

In the view of the district court, a paucity of evidence existed with regard to the remaining claims. Mr. Goetzke could not demonstrate that Crawford and Ferro had engaged in an unlawful activity--namely retaliatory discharge--thereby foreclosing the civil conspiracy claim. After rejecting Crawford's contention that federal courts lacked subject matter jurisdiction over the tortious interference claim, the district court concluded that Mr. Goetzke had failed to prove the elements of the tort. At a minimum, no evidence existed to prove that Crawford induced Ferro to terminate Mr. Goetzke.


II

DISCUSSION

A.

We must first address Ferro's contention that Indiana law does not permit Mr. Goetzke to maintain a Frampton action/4--a claim alleging that an employer discharged its em-ployee for filing a worker's compensation claim. More precisely, Ferro submits that a Frampton claim is unavailable to former employees such as Mr. Goetzke who were covered by a collective bargaining agreement at the time of their termination. The precise scope of a Frampton action is a question of Indiana law. We have stated that, when "resolution of [an] issue depends on [state] law, we must apply the law that

would be applied in this context by the [state] Supreme Court." Home Value, Inc. v. Pep Boys, 213 F.3d 960, 963 (7th Cir. 2000) (quoting McGeshick v. Choucair, 9 F.3d 1229, 1232 (7th Cir. 1993)). If the state supreme court has not addressed the matter, this court "generally treat[s]decisions by the state's intermediate appellate courts as authoritative unless there is a compelling reason to doubt that [those] courts have got the law right." Home Value, Inc., 213 F.3d at 963 (internal quotations and citations omitted).

Because the Supreme Court of Indiana has not addressed this precise issue, we turn to Indiana's intermediate appellate courts for guidance. In Bentz Metal Products Co., Inc. v. Stephans, 657 N.E.2d 1245 (Ind. Ct. App. 1995), the Court of Appeals of Indiana considered and rejected Ferro's narrow construction of the Frampton action. Specifically, in Bentz, the court concluded that employees covered by collective bargaining agreements at the time of their discharge may maintain Frampton claims. See id. at 1247-48. Unless compelling evidence casts doubt on the Bentz ruling, we treat it as authoritative concerning the scope of the Frampton action.

Ferro correctly notes that, in a diversity case decided prior to Bentz, this court reached an opposite conclusion concerning the availability of a Frampton action to this class of workers. See Vantine v. Elkhart Brass Mfg. Co., Inc., 762 F.2d 511, 517 (7th Cir. 1985). In Vantine, we emphasized that collective bargaining agreements adequately protected the goals and policies underlying Indiana's worker's compensation scheme; as such, we concluded that a Frampton action was not available to employees covered by collective bargaining agreements. See Vantine, 762 F.2d at 517. However, at the time of the Vantine decision, the Indiana courts had not addressed the question raised in that case.

Over a decade later, we now have guidance from the Indiana courts concerning the availability of the Frampton action to employees covered by a collective bargaining agreement. In Bentz, the Court of Appeals of Indianaexpressly declined to follow our

decision in Vantine. See Bentz Metal Prod. Co., Inc., 657 N.E.2d at 1248 n.2. The Indiana appellate court noted that we had not considered "Indiana precedent regarding the employment-at-will doctrine" when reaching our conclusion. See id. Just as importantly, it noted that, at the time Vantine was decided, we did not have the benefit of the holding of the Supreme Court of the United States in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988). In Lingle, the Supreme Court held that an employee protected by a collective bargaining agreement that provides the employee with a contractual remedy for discharge without just cause may nevertheless seek a state remedy for retaliatory discharge for exercising rights under the state worker's compensation statute. See Lingle, 486 U.S. at 413. Given these developments, we believe that the proper course is for this court to follow the decision of the Court of Appeals of Indiana in Bentz. Therefore, Mr. Goetzke may maintain a Frampton action even though he was covered by a collective bargaining agreement at the time of his termination./5

B.

1.

We turn now to an examination of whether the district court properly granted summary judgment on Mr. Goetzke's Frampton claim. We review de novo the district court's grant of summary judgment. See Thomas v. Pearle Vision, Inc., 251 F.3d 1132, 1136 (7th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court's function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We must ask whether "there are genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." Id. at 250. In assessing whether a genuine issue of material fact exists, we must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. See id. at 255; Basith v. Cook County, 241 F.3d 919, 926 (7th Cir. 2001).

2.

To maintain a Frampton action, the plaintiff must establish a causal nexus between his termination and the filing of a worker's compensation claim. See Hamann v. Gates Chevrolet, Inc., 910 F.2d 1417, 1420 (7th Cir. 1990); Markley Enter., Inc. v. Grover, 716 N.E.2d 559, 565 (Ind. Ct. App. 1999). The plaintiff must submit either direct or indirect evidence to satisfy this burden. See Markley Enter., Inc., 716 N.E.2d at 565. Because direct evidence frequently does not exist in these cases, a party usually must rely on indirect methods of proof. In particular, when considered with other circumstances, the temporal proximity between termination and filing of the worker's compensation claim may satisfy the plaintiff's burden in some cases. See Hamann, 910 F.2d at 1420. In addition, retaliation may be inferred if the plaintiff demonstrates that the employer's proffered lawful reason for the termination is "patently inconsistent with the evidence before the court." Markley Enter., Inc., 716 N.E.2d at 565.

Mr. Goetzke contends that a reasonable jury could determine that Ferro discharged him in retaliation for exercising his rights under Indiana's worker's compensation scheme. In particular, he submits that a jury may infer Ferro's retaliatory intent based upon the close temporal proximity between his termination and his request for assistance from Indiana's industrial board. Ferro responds that it had a legitimate reason for terminating Mr. Goetzke--its belief he was defrauding the company--thereby negating any inference of retaliatory intent. Mr. Goetzke, however, contends that he has submitted sufficient facts to demonstrate the pretextual nature of Ferro's asserted reasons for his termination.

As an initial matter, we note that, in his application for assistance, Mr. Goetzke does not mention any grievances

against Ferro. To the contrary, the request contains numerous complaints relating only to Mr. Goetzke's medical care and his desire for additional treatment; the application largely objects to the conduct of his doctors and his case manager, Foy. Mr. Goetzke, however, contends that, if the ombudsman had ordered further treatment, the costs would have fallen on Ferro rather than its insurance carrier or Crawford. We note that Mr. Goetzke never sets forth within any specificity why this conclusion is necessarily true. Although he asks us to assume that Ferro's insurance carrier would pass the costs along to its insured in the form of higher premiums at some point in time, reaching this conclusion on this record is speculative at best. Mr. Goetzke has failed to adduce evidence in support of his contention.

We next turn to Mr. Goetzke's temporal proximity arguments. We conclude that the temporal proximity between the filing of Mr. Goetzke's original worker's compensation claim and his termination does not create an inference of retaliation. One year lapsed between Mr. Goetzke's termination and Ferro's decision to file a worker's compensation claim on his behalf. Although the Indiana courts have indicated that a six-month time lapse coupled with additional evidence of retaliation will defeat a motion for summary judgment, see, e.g., Pepkowski v. Life of Ind. Ins. Co., 535 N.E.2d 1164, 1167-68 (Ind. 1989), they have not indicated whether a longer period of time would prove fatal to a plaintiff's Frampton claim. In analogous Title VII cases, we have concluded time lapses similar to the one present in this case, without more, fail to create an inference of retaliation./6 See Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1010 (7th Cir. 2000) (twelve-month time lapse fails to create an inference of retaliation). In fact, we have stated that "substantial time lapse between protected activity and the adverse action is counter-evidence of any causal connec tion." Johnson v. Univ. of Wisconsin-Eau Claire, 70 F.3d 469, 480 (7th Cir. 1995). Analogizing Mr. Goetzke's case to this body of law, the timing between his termination and the filing of the original worker's compensation claim provides no indication of retaliatory

intent.

Mr. Goetzke instead stresses the close temporal proximity, roughly thirty days, between his termination and his petition for assistance from Indiana's industrial board. According to Mr. Goetzke, this fact creates a strong inference of Ferro's retaliatory intent. Although Ferro contends that its decision to terminate Mr. Goetzke occurred before it learned of his application for assistance, the record does not support unequivocally this contention. We have reviewed the deposition testimony of both Hartford and Ferro's director of human resources. Neither individual could state definitively that the discharge decision preceded Mr. Goetzke's request for assistance from the industrial board. Because we cannot say with certainty that the termination decision predated the application for assistance, we turn to Ferro's contention that it had a legitimate, non-retaliatory reason for discharging Mr. Goetzke.

Before Mr. Goetzke filed his application for assistance, Ferro possessed evidence--the FCE and surveillance tapes--that tended to show that he was malingering. In particular, the videotapes capture Mr. Goetzke in a variety of activities: bending at the waist for several minutes while working on his car, pushing down forcefully and repeatedly on the hood of his car, and laying across the front seat of his vehicle while his feet dangled awkwardly outside of the truck. Mr. Goetzke emphasizes that his conduct on the videotapes is not inconsistent wholly with the physical limitations noted on his FCE. A layman, however, could interpret fairly Mr. Goetzke's physical capabilities as seen on the videotape as beyond those described in the FCE.

In reaching its conclusion that Mr. Goetzke was exaggerating the extent of his injury, Ferro also relied on the con tents of the FCE. At several points, the report notes that Mr. Goetzke exaggerated his symptoms. Indeed, the cover letter of the FCE states in plain, simple terms that "Mr. Goetzke did magnify his symptoms and his ability may be greater than what the data on the test indicates." Dep. V.3, Ex.4. Another portion of the report notes thirteen apparent inconsistencies between Mr.

Goetzke's professed and actual physical capabilities. One portion of the report does indicate that Mr. Goetzke "unconsciously" failed to use full efforts during the FCE./7 The Ferro officials responsible for reviewing the FCE testified that they could not remember reading this latter portion of the report, and, further testified that even if they had read it, this language would not have altered their assessment of Mr. Goetzke in light of the other portions of the document. Arguably, Ferro officials may have been negligent in failing to read the entire report or in relying solely upon those portions of the FCE that they considered unequivocal. However, Indiana law does not render a company liable for retaliatory discharge because it used poor judgment. Rather, a Frampton action may only succeed upon proof of the employer's retaliatory intent. Ferro's failure to read the entire report may indicate negligence on the company's part, but it does not indicate pretext.

Mr. Goetzke raises several other contentions in an effort to demonstrate the pretextual nature of Ferro's asserted rationale for his termination. Some evidence exists that Foy, the nurse managing Mr. Goetzke's case, believed that Mr. Goetzke neither had attempted to defraud Ferro nor was malingering. Mr. Goetzke also alleges that he was on pain medication during the periods in which he was videotaped. He submits that the medication accounts for any increased physical activity depicted on the videotapes. The contentions concerning both Foy and Mr. Goetzke's medicated state suffer from a common deficiency; Ferro officials apparently knew of neither piece of evidence at the time they terminated Mr. Goetzke. In particular, the record provides no indication that Foy ever communicated her views to Ferro officials prior to Mr. Goetzke's termination. Similarly, Mr. Goetzke has offered no evidence that indicates Ferro officials were aware he was on pain medication at the time the surveillance occurred. In the context of Title VII cases, this court has stated that "the question is not whether [the evaluation was] right but whether the employer's description . . . is honest." Gustovich v. AT&T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992).

Similarly, this evidence attempts to challenge the accuracy, as opposed to the honesty, of Ferro's asserted reasons for discharging Mr. Goetzke. This is an insufficient basis to demonstrate the pretextual nature of Ferro's proffered reasons for his termination./8

Finally, Mr. Goetzke notes several other incidents that he contends create an inference of Ferro's retaliatory intent. First, he points to the October 1996 incident in which Ferro tested him for alcohol consumption. Ferro ordered the test only after a supervisor thought he smelled alcohol on Mr. Goetzke. Mr. Goetzke tested negative, and, notably, Ferro never ordered him to take another alcohol test and took no additional adverse action against him as a result of this incident. Simply put, this evidence is not probative of his retaliatory discharge claim.

Mr. Goetzke also contends that, in retaliation for filing his worker's compensation claim, Ferro transferred him during September 1996 to a position that required him to work twelve-hour shifts. As a result of his injury, Ferro transferred Mr. Goetzke to a light duty position, and this position initially entailed a twelve-hour shift. This assignment, however, required less strenuous activity than did his original position with Ferro. Moreover, once Mr. Goetzke informed his employer that the lengthy shift bothered his back, Ferro sent him to the doctor and immediately assigned him to an eight-hour shift. In total, Mr. Goetzke worked six twelve-hour shifts over a period of four months. Again, this evidence does not establish that Ferro's articulated reason for the discharge was pretextual. Indeed, the absence of any evidence of pretext is, standing alone, sufficient to justify the grant of summary judgment on Mr. Goetzke's Frampton claim.

C.

We must now examine whether the district court properly granted summary judgment on Mr. Goetzke's allegation that Ferro and Crawford conspired to terminate him. We conduct a de novo review of the district court's determination.

Mr. Goetzke maintains that Ferro and

Crawford conspired to terminate his employment for filing a worker's compensation claim./9 A "civil conspiracy is defined as a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." See Huntington Mortgage Co. v. DeBrota, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998). Mr. Goetzke maintained that Ferro and Crawford conspired to commit an unlawful act--firing him for filing a worker's compensation claim. We already have determined that the district court properly granted summary judgment on Mr. Goetzke's Frampton claim. It follows that it is impossible that Ferro and Crawford engaged in the alleged unlawful conspiratorial conduct. Because Mr. Goetzke cannot prove the necessary illegal purpose of the conspiracy, his conspiracy claim must fail.

Even if we are in error in our affirmance of the summary judgment on the Frampton claim, we would nevertheless conclude that Mr. Goetzke has failed to submit any evidence probative of his conspiracy claim. Specifically, Mr. Goetzke cites numerous calls between Ferro and Crawford over a nine-month period as evidence of conspiracy. Mr. Goetzke's reliance on these calls is misplaced. This evidence, standing alone, merely proves that Ferro remained in contact with its claims management company. To assert that the calls are evidence of a conspiracy is simply specu lation. In addition, Foy and Yadwiga Duncan, Crawford's claims adjustor, both testified in depositions that they only learned of Mr. Goetzke's discharge days after his actual termination. Moreover, no evidence has been offered to refute testimony by Ferro officials indicating that they alone discussed and ultimately settled upon the termination of Mr. Goetzke. Accordingly, we affirm the district court's entry of summary judgment on the claim of civil conspiracy.

D.

Finally, we must consider Mr. Goetzke's claim that Crawford tortiously interfered in his employment relationship with Ferro. As an initial matter, Crawford contends that the district court lacked

subject matter jurisdiction over this portion of Mr. Goetzke's complaint. Thus, according to Crawford, the court should dismiss the tortious interference claim for lack of subject matter jurisdiction.

More precisely, Crawford submits that a statutory provision contained in Indiana's worker's compensation scheme deprives federal as well as state courts of jurisdiction over Mr. Goetzke's tortious interference claim. Specifically, the relevant statutory provision states that:

The worker's compensation board, upon hearing a claim for benefits, has the exclusive jurisdiction to determine whether . . . the employer's worker's compensation administrator or the worker's compensation carrier has acted with a lack of diligence, in bad faith, or has committed an independent tort in adjusting or settling the claim for compensation.

Ind. Code 22-3-4-12.1(a). This exclusivity provision channels to an administrative agency a worker's claims concerning the adjustment or settlement of a worker's compensation award. In effect, this exclusivity provision strips the Indiana state courts of jurisdiction over this class of claims./10

It is not correct to say, as Crawford suggests, that the Indiana legislature has deprived the federal courts of subject matter jurisdiction over this matter. "The jurisdiction of the federal courts--their power to adjudicate--is a grant of authority to them by Congress." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167 (1939). Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority. See Truck Components v. Beatrice Co., 143 F.3d 1057, 1061 (7th Cir. 1998); Beach v. Owens-Corning Fiberglass Corp., 728 F.2d 407, 409 (7th Cir. 1984). In this case, the federal diversity statute, 28 U.S.C. sec. 1332, conferred subject matter jurisdiction on the district court to adjudicate Mr. Goetzke's claims--including his allegations of tortious interference. The exclusivity provision of Indiana's worker's compensation statute does nothing to affect that grant of

jurisdictional authority.

Whether there remains a viable cause of action is a separate question. When a federal court exercises diversity jurisdiction, it merely serves as a neutral forum in which to present state law claims. See Woods v. Interstate Realty Co., 337 U.S. 535, 538 (1949). As such, it must apply applicable substantive state laws to the case before it. Thus, a federal forum, "when invoked on grounds of diversity of citizenship, cannot give that which [the state] has withheld." Angel v. Bullington, 330 U.S. 183, 192 (1947). If state substantive law has denied a plaintiff a remedy for his cause of action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted. See Beach, 728 F.2d at 409.

We therefore must consider whether Indiana law, through this exclusivity provision, has denied Mr. Goetzke the ability to assert a remediable claim against Crawford. The Indiana statute bars suits in state court that allege a worker's compensation administrator such as Crawford has committed an independent tort "in adjusting or settling a claim for compensation." Ind. Code 22-3-4-12.1(a). Notably, two elements must exist before this statute is implicated. First, the tort must constitute an "independent tort" within the meaning of the exclusivity provision. See Samm v. Great Dane Trailers, 715 N.E.2d 420, 424, 426 (Ind. Ct. App. 1999), transfer denied, 735 N.E.2d 221 (Ind. 2000). Second, the worker's compensation administrator must have committed the tort in the context of adjusting or settling a claim for benefits. See Samm, 715 N.E.2d at 427.

Mr. Goetzke's claim appears to satisfy the first element of the statute. In particular, the few Indiana courts to construe the statutory phrase "independent tort" have given it a broad meaning. See Sims v. United States Fid. & Guar. Co., 730 N.E.2d 232, 236 (Ind. Ct. App. 2000) (stating that gross negligence and intentional infliction of emotional distress are independent torts within meaning of the statute), transfer granted on another question, May 4, 2001; Samm, 715 N.E.2d at 426 (finding defamation is an independent tort within the meaning of the statute). But see Samm, 715 N.E.2d at

424 (finding that the tort of retaliatory discharge is not an "independent tort" within the meaning of the statute). Mr. Goetzke undoubtedly alleges a tort claim against Crawford. See, e.g., Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1234 (Ind. 1994) ("Indiana has long recognized that intentional interference with a contract is an actionable tort."). Given the backdrop of the Sims and Samm cases, Mr. Goetzke's tortious interference claim most likely constitutes an independent tort within the meaning of the exclusivity provision of the Indiana statute.

However, a second component is necessary before the claim falls within the scope of the statute. Specifically, the independent tort must have been committed by the worker's compensation administrator in adjusting or settling a compensation claim. See Ind. Code 22-3-4-12.1(a). One Indiana court has provided some elaboration on this element.

In Samm v. Great Dane Trailers, 715 N.E.2d 420, 427 (Ind. Ct. App. 1999), an employer discharged the plaintiff for allegedly filing a fraudulent worker's compensation claim. In response to his termination, the plaintiff filed a defamation action against the employer in state court. The Indiana superior court, however, dismissed the claim for lack of subject matter jurisdiction stating that the cause of action fell within the exclusivity provision of the worker's compensation statute. In reversing this decision, the Court of Appeals of Indiana emphasized that the independent tort must have been "part of [the worker's compensation administrator's] procedure for 'adjusting or settling' [a plaintiff's] claim for worker's compensation benefits." Samm, 715 N.E.2d at 427. As such, if the defamatory statements "were made within the context of the benefits denial, . . . the complaint would seem to allege an independent tort which falls within the exclusive jurisdiction of the Board." Id. at 427. However, had the defamatory statement followed the denial of benefits, the claim would fall outside of the exclusivity provision because the "defamatory action would appear to be related to but separate and independent from [the defendant's] procedure for 'adjusting or settling' a request for

benefits." Id. As the court could not determine whether the defamation claim was intertwined with or separate from the procedure for adjusting or settling the plaintiff's worker's compensation claim, it remanded the case for further fact finding.

As Samm makes clear, to fall within the ambit of the statute, Crawford's alleged tortious conduct must have occurred as part of its procedure for adjusting or settling Mr. Goetzke's claim for worker's compensation benefits. This element is simply not present in this case. Specifically, Mr. Goetzke contends that Crawford engaged in a pattern of conduct designed to oust him from his job at Ferro. If Crawford actually engaged in such conduct, such actions would not form part of Crawford's procedure for adjusting or settling Mr. Goetzke's claims. Because the tortious interference claim falls outside of the scope of the exclusivity provision, Mr. Goetzke has stated a claim upon which relief could be granted. Thus, the district court properly addressed the merits of this count of Mr. Goetzke's complaint.

E.

Finally, we must determine whether the district court erred in granting summary judgment to Crawford on the tortious interference claim. We review de novo the district court's grant of summary judgment. To maintain a tortious interference claim under Indiana law, a plaintiff must demonstrate "(i) the existence of a valid and enforceable con tract, (ii) defendant's knowledge of the contract, (iii) defendant's intentional inducement of breach of the contract, (iv) absence of justification and (v) damages resulting from defendant's wrongful inducement of the breach." Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1235 (Ind. Ct. App. 1994).

At a minimum, Mr. Goetzke has failed to prove the third element of the tort--that Crawford intentionally induced his termination. Specifically, Mr. Goetzke has failed to submit any evidence that would lead a reasonable juror to conclude that Crawford intentionally attempted to have him fired from his job. To establish this element, Mr. Goetzke again relies on the numerous phone calls between Crawford

and Ferro in the nine-months prior to his termination. To infer inducement from this evidence is mere speculation. Moreover, Ferro, not Crawford initiated the investigation into the possible fraudulent nature of Mr. Goetzke's back injuries. In particular, a Ferro official, Steve Hartford, requested that Crawford perform surveillance on Mr. Goetzke. Finally, Ferro has submitted uncontroverted testimony that Crawford had no involvement in the termination decision. Specifically, only Ferro officials comprised the group that ultimately decided to discharge Mr. Goetzke. Because Mr. Goetzke cannot prove the third element of the tort, the district court properly granted summary judgment on this claim.

Conclusion

   We conclude that none of Mr. Goetzke's claims present a genuine issue of triable fact. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 Mr. Goetzke notes that a physician from whom he sought a second opinion had suggested that further therapy remained an option. Crawford, however, would not authorize a return trip to this physician. Rather, Crawford deferred to the findings of Mr. Goetzke's physician of record.

/2 The Waddell evaluation gauges symptom magnification in a patient with "0" indicating no magnification of symptoms.

/3 Indiana law provides numerous procedural safeguards for employees once they have submitted a request for and have begun to receive benefits under the state's worker's compensation scheme. In particular, if an employee disputes the termination of benefits or has received no benefits at all, he may file a "Request for Assistance" with the Industrial Board of Indiana. The request initiates an informal dispute resolution process headed by an ombudsman. The ombudsman will conduct a brief investigation and attempt to resolve the dispute by contacting both the employee and the employer/insurance carrier. If he cannot resolve the dispute, the ombudsmen submits the matter to a worker's compensation judge.

/4 This cause of action is named for the Supreme Court of Indiana's decision in Frampton v. Cen-

tral Indiana Gas Co., 297 N.E.2d 425 (Ind. 1973). In Frampton, the Supreme Court of Indiana recognized a limited exception to the employment at-will doctrine. Specifically, it concluded that an employer could not terminate an employee for filing a worker's compensation claim with the state's industrial board. If an employer terminated an employee in contravention of this rule, the employee could bring a retaliatory discharge claim in state court. However, the Frampton case did not address the scope of its holding--particularly whether employees covered by collective bargaining agreements fell within the decision's ambit.

/5 Because our holding overrules Vantine v. Elkhart Brass Manufacturing Co., Inc., 762 F.2d 511, 517 (7th Cir. 1985), this opinion has been circulated to the entire court pursuant to Circuit Rule 40(e). No judge in active service has requested a vote to hear this case en banc.

/6 This court has concluded that time lapses briefer than the one present in this case fail to create an inference of causation. See, e.g., Filopovic v. K & R Express Sys., Inc., 176 F.3d 390, 399 (7th Cir. 1999) (4-month lapse); Adusumulli v. City of Chicago, 164 F.3d 353, 363 (7th Cir. 1998) (8-month lapse); Parkins v. Civil Constr. Contractors, Inc., 163 F.3d 1027, 1039 (7th Cir. 1998) (3-month lapse).

/7 The report stated:

[I]t is my opinion that [Mr. Goetzke] is UNABLE to perform work at the Medium level . . . . HOWEVER, I DO BELIEVE THE CLIENT IS MAGNIFYING THE PAIN SYMPTOMS IN AN UNCONSCIOUS EFFORT TO CONTROL THE ENVIRONMENT.

Dep. V.3, Ex.4.

/8 Mr. Goetzke also argues that the Ferro employee who terminated him based on the FCE and videotape evidence lacked the medical expertise to determine if he was feigning his injury. He further submits that the company never asked him about the inconsistences it perceived on the videotape. Similar to the arguments above, these contentions do not question the genuineness of Ferro's assessment; rather, they call into doubt the accuracy of the company's determinations.

/9 As a technical matter, Indiana does not recognize a cause of action for civil conspiracy. Rather, it recognizes an action for damages resulting from a conspiracy. See Huntington Mortgage Co. v. DeBrota, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998).

/10 At the time the district court rendered its decision in this case, the Court of Appeals of Indiana recently had concluded that the exclusivity provision violated the open courts clause of the Indiana Constitution. See Sims v. United States Fid. & Guar. Co., 730 N.E.2d 232, 235 (Ind. Ct. App. 2000), transfer granted, May 4, 2001. Because the Indiana courts had held the provision invalid, the district court concluded that it could adjudicate Mr. Goetzke's tortious interference claim. However, since the time of the district court's decision, the Supreme Court of Indiana has granted a transfer in the Sims case. Under Indiana appellate procedure, "if a transfer is granted, the opinion . . . of the Court of Appeals shall be automatically vacated." Ind. R. App. Proc. 58A. The only remaining opinion concerning the validity of the exclusivity provision--Borgman v. State Farm Ins. Co., 713 N.E.2d 851, 855 (Ind. Ct. App. 1999), transfer denied, 726 N.E.2d 307--has held the statute constitutional.