Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, in Her Capacity as Liquidator of Pennsylvania Independent Association, National Independent Business Association, NIBA Group Benefits Trust, American Independent Business Alliance and AIBA Group Insurance Trust a/k/a AIBA Group Benefits Trust, Plaintiff,

v.

### PROGRESS FEDERAL SAVINGS AND LOAN, Defendant.

Commonwealth Court of Pennsylvania.

Argued May 8, 1997.

Decided July 1, 1997.

Robert T. Vance, Jr., Philadelphia, for plaintiff.

Thomas C. Branca, Norristown, for defendant.

Before COLINS, President Judge, FRIEDMAN, J., and LORD, Senior Judge.

LORD, Senior Judge.

Before us are motions for summary judgment filed by both Plaintiff, the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner), in her capacity as statutory liquidator of several purported insurance companies known as AIBA, NIBA and PIBA (collectively, AIBA),[1] and Defendant, Progress Federal Savings and Loan Bank (Progress), on a complaint brought in our original jurisdiction pursuant to Section 761(a)(3) of the Judicial Code, 42 Pa.C.S. § 761(a)(3), and Section 504(d) of what is commonly referred to as the Insurance Act,[2] 40 P.S. § 221.4(d).

## FACTS

The parties ask us to decide their respective summary judgment motions based on the following stipulated facts.

Craig B. Sokolow was chief executive officer and majority shareholder of AIBA, which was suspended from doing business in the Commonwealth in May 1989 and eventually placed into liquidation. Approximately nine months before the suspension of AIBA, Sokolow and a corporation he controlled known as STE–VIN Developers, Inc. obtained a $1,834,957 construction loan from Progress to build residences. Progress required that $350,000 be posted as cash collateral for the construction loan. On August 16, 1988, Sokolow in his name pledged to Progress a total of $350,000 in three certificates of deposit. Two checks dated August 16, 1988 were issued to Progress in payment for the certificates. One check was in the amount of *$300,000, drawn on Sokolow's personal account* at Commonwealth Federal Savings & Loan Bank, and the other was for *$50,000, drawn on a NIBA reserve trust account* at Progress. The certificates were titled to Sokolow individually, although the address on them was in care of NIBA's business address.[3]

Subsequently, a branch manager for Progress was advised by NIBA's bookkeeper that NIBA had to change its name. The bookkeeper instructed Progress that as NIBA certificates of deposit matured, they should be redeemed and placed in NIBA's money market account, to be held there until the name change was accomplished. Progress followed those instructions, but mistakenly did so as well as to the Sokolow certificates. In January 1989, Progress redeemed the Sokolow certificates and credited the NIBA money market account with $361,999.05, which was the total amount due on the Sokolow certificates at that time. In March 1989, Progress was informed that NIBA had become AIBA. At the direction of NIBA's bookkeeper, Progress debited the NIBA money market account and issued ten $100,-

1. For purposes of this case there is no relevant distinction between AIBA and any of the purported insurance companies—Pennsylvania Independent Association, National Independent Business Association, NIBA Group Benefits Trust, American Independent Business Alliance and AIBA Group Insurance Trust a/k/a AIBA Group Benefits Trust.

2. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§ 1—324.13. Article V of the Insurance Act was added by the Act of December 14, 1977, P.L. 280, *as amended,* 40 P.S. § 221.1—221.63.

3. At the time of settlement on the construction loan, an administrative hold was placed on the Sokolow certificates because they were pledged collateral. However, as the initial term of the certificates was only thirty days, the hold was automatically lifted thirty days later. Due to an administrative error, a hold was never placed back on the certificates.

000 certificates of deposit titled to AIBA, which debited amount included the funds that originally comprised the Sokolow certificates.

By order dated May 2, 1989, the Commissioner suspended AIBA from doing any further business as a purported insurance company in the Commonwealth.[4] The suspension order "froze" all of AIBA's bank accounts and other financial instruments, prohibiting the disbursement to any person of any portion of AIBA's funds without the prior written approval of the Commissioner. The order was silent as to its effect on Sokolow as an individual and bank accounts and other financial instruments in the name of Sokolow as an individual, and none of Sokolow's personal accounts were ever frozen by the Commissioner.

Several days later, Progress received notice of the suspension order from Arthur Selikoff, Esq., assistant counsel in the Commonwealth's Insurance Department. Progress froze AIBA's accounts. On June 21, 1989, at the request of Selikoff, Sokolow sent a letter to an investigator for the Insurance Department, Samuel Kohlmeyer, stating there were no AIBA, NIBA or PIBA funds in Sokolow's personal account at Commonwealth Federal Savings & Loan Bank, the account on which the $300,000 check used to purchase part of the Sokolow certificates had been drawn.

Sokolow next demanded that Progress release him the Sokolow certificates in the amount of $350,000 plus interest. Progress then discovered that its employees had mistakenly redeemed those certificates and placed them in the name of AIBA. On October 2, 1989, a manager for Progress notified Kohlmeyer by letter that Progress had redeemed the Sokolow certificates and mistakenly placed them in the name of AIBA. Kohlmeyer and Selikoff reviewed documents and were satisfied that the Sokolow certificates had been mistakenly redeemed and placed in the name of AIBA.

On November 9, 1989, Selikoff and Progress' counsel, Cheryl Young, Esq., had a telephone conversation. Young advised Selikoff that Progress intended to correct its mistake and return the Sokolow certificates to Sokolow and sought Selikoff's authorization to do so. Selikoff acknowledged that the suspension order did not apply to Sokolow's personal funds, but neither authorized nor prohibited Progress' intended course of action. After the conversation, without having received prior written authorization from the Commissioner, Progress released to Sokolow the Sokolow certificates in the amount of $350,000 plus interest. Sokolow in turn used that sum on the next day to pay Progress part of $754,134.92, which amount was the principal and interest due on the construction loan.

One month later, Selikoff sent a letter to Young indicating that the payment to Sokolow was unauthorized and that recovery of the amount at issue might be sought. In March 1991, the Commissioner in her capacity as liquidator of AIBA[5] filed a complaint against Progress, seeking to recover the amount of $350,000 paid by Progress to Sokolow, as well as interest thereon and a penalty of $10,000.

The parties conducted discovery and eventually stipulated the facts set forth herein. Significantly, the parties agree that, at all relevant times, Progress knew that $50,000 of the funds used to purchase the Sokolow certificates were provided by a check drawn on the NIBA reserve trust account maintained at Progress, and that there is no evidence the NIBA account contained anything but NIBA's funds. It is additionally stipulated that neither Progress nor the In-

---

4. Section 510(a) of the Insurance Act provides:

   (a) Whenever the commissioner has reasonable cause to believe, and determines ... that any insurer has committed or engaged in any act ... that would subject it to formal delinquency proceedings ... he may make and serve upon the insurer and any other persons involved, such orders, including an order suspending the business of an insurer, as are reasonably necessary to correct, eliminate or remedy such conduct, condition or ground. 40 P.S. § 221.10(a).

5. A petition for liquidation was filed in June 1989 and, following AIBA's consent, this Court in December 1989 entered an appropriate order pursuant to Section 520 of the Insurance Act, 40 P.S. § 221.20. The Commissioner was appointed liquidator under that provision in February 1990.

surance Department has any evidence that the $300,000 check provided to Progress to purchase part of the Sokolow certificates was drawn on an account that contained anything other than Sokolow's personal funds. These simple facts are extremely important, as they form the basis for our decision on the summary judgment motions, recently filed by each party, that are now presented for our disposition.

### ARGUMENTS

It is the Commissioner's position based on the stipulated facts that Progress violated the May 2, 1989 suspension order by disbursing AIBA's funds—$350,000 plus interest—to Sokolow without written or oral permission. The Commissioner initially notes that the Insurance Act provides a civil penalty of up to $10,000 for any person who violates such an order. She also argues that we should declare Progress to be in contempt of the suspension order and assess a "fine" against it in the amount of $350,000 plus interest. Further, the Commissioner asserts that Progress should make restitution in that amount because it has been unjustly enriched by violating the suspension order. The Commissioner additionally maintains that at least $50,000 plus interest—stipulated to be AIBA's funds—must be recovered as an illegal preference; she claims that the remaining amount can be shown to be the property of AIBA as well, and thus also recoverable as an illegal preference, if she is permitted to adduce after-discovered evidence on piercing the corporate veil. The Commissioner next submits that she is entitled to the total amount on the grounds that the payment to Sokolow constituted bad faith and a fraudulent transfer. Last, the Commissioner disputes the contention that, in view of the telephone conversation with Selikoff, the requisite elements of equitable estoppel have been established.

On the other hand, Progress claims in its amended motion for summary judgment that the Commissioner's theories of recovery fail because Progress had a superior perfected security interest in the entire $350,000 sum, which was used as collateral and for partial repayment of the $1.8 million construction loan. Progress also asserts that the Insurance Department acquiesced in the payment to Sokolow and therefore that equitable estoppel applies. Moreover, Progress contends that it cannot be held in contempt where the facts show a clerical error was made and the suspension order froze only AIBA's funds, not Sokolow's personal funds. It asks alternatively that we grant judgment in its favor for $300,000 of the sum sought by the Commissioner, since such amount without question was not AIBA's funds and payment of that amount to the Commissioner would constitute unjust enrichment.

### DISCUSSION

We determine that the proper resolution of this matter is readily apparent from the facts stipulated by the parties.

### I.

██ First, while the suspension order applied to AIBA's funds, there is no doubt that the $300,000 sum was derived from Sokolow's personal funds in his personal account. It is acknowledged that Progress made a clerical mistake in placing those personal funds in an AIBA account. Thus, it is obvious that $300,000 were in fact not AIBA's funds, but were Sokolow's personal funds, which, as Progress confirmed with Selikoff, were not the subject of the suspension order. The Commissioner's arguments would require us to ignore these circumstances, decide that Progress should have perpetuated an undisputed mistake reported to the Commissioner, and without authority allow the Commissioner to recover Sokolow's personal money, which has never been "frozen." Instead, the stipulated circumstances compel the conclusion that Progress did not violate the suspension order in disbursing what were actually and undeniably personal funds—not subject to any order—in the amount of $300,000.

This conclusion in turn necessarily defeats all of the Commissioner's arguments as to that sum, which we hold the Commissioner cannot recover. Specifically, since it is clear that a clerical error occurred and the $300,000 sum did not constitute AIBA's funds, we will not hold Progress in contempt of the order prohibiting disbursement of AIBA's

funds. For the same reason, the claim of the Commissioner for restitution of that amount under Section 510(g) of the Insurance Act, 40 P.S. § 221.10(g), providing that "any court of general jurisdiction may grant ... orders as may be deemed necessary and proper to enforce a summary order," is inappropriate. Similarly, the claim of bad faith and fraudulent transfer of the sum under Section 529(b) of the Insurance Act, 40 P.S. § 221.29(b), must fail. Progress was only returning funds to the admitted rightful owner, Sokolow, as far as the $300,000 sum was concerned. Apart from the fact that we perceive no bad faith by Progress in this regard, section 529(b) applies to "[a] transfer of any of the *property of the insurer.*" 40 P.S. § 221.29(b) (emphasis added). Finally, the Commissioner's theory that evidence discovered after November 1989 could show Sokolow's personal funds were actually AIBA's funds, i.e., property of the insurer, and thus the payment of $300,000 to Sokolow was an illegal preference under Section 530(a) of the Insurance Act, 40 P.S. § 221.30(a), was not raised in the Commissioner's complaint—filed in 1991—or developed during the subsequent years in this matter. In any event, it fails given the stipulation that neither party has any evidence that the $300,000 check provided to Progress to purchase the Soko·low certificates was drawn on an account that contained anything other than Sokolow's personal funds.

We shall therefore grant in part Progress' amended motion for summary judgment and deny in part the Commissioner's motion.

## II.

■ Next, as to the $50,000 amount, it is equally clear from the stipulated facts that the sum constituted AIBA's funds at all times. It was therefore certainly subject to the suspension order and Progress, which, according to the accepted facts, knew the $50,000 sum originated from AIBA's funds, could disburse it only with written authoriza-tion from the Commissioner. Progress never obtained any authorization to disburse it, and has not otherwise shown facts rising to the level of equitable estoppel as to disbursing actual funds of AIBA.[6] Thus, unlike the situation pertaining to the $300,000 amount, Progress did, on its own, violate the suspension order, of which it was aware, when it gave Sokolow the $50,000 AIBA sum; in turn, Progress itself benefitted by the repayment of the construction loan from funds that were ordered not to be disbursed. In this respect, Section 510(g) of the Insurance Act now becomes applicable to this case. Again, that section provides that "any court of general jurisdiction may grant ... orders as may be deemed necessary and proper to enforce a summary order." 40 P.S. § 221.10(g).

■ Progress argues that we nevertheless should not order judgment against it for the $50,000 amount, because it had a prior, superior perfected security interest in the $50,-000—as well as all of the collateral—such that Progress, not the Commissioner, was entitled to that sum. Progress contends that, pursuant to the Uniform Commercial Code, Article 9, Secured Transactions, 13 Pa.C.S. §§ 9101—9507 (Article 9), its possession before the suspension order of the $350,000 in collateral constituted a perfected security interest, a priority over the Commissioner's claims that is not extinguished by the Insurance Act.[7] Progress bases its argument on the decision under Article 9 in *Royal Bank of Pennsylvania v. Selig*, 434 Pa. Superior Court 537, 644 A.2d 741 (1994), *petition for allowance of appeal denied*, 540 Pa. 584, 655 A.2d 516 (1995). The Court there held Continental Bank was not in contempt when, despite a writ of attachment by Royal Bank on a custodial account at Continental Bank containing securities of two depositors, Continental Bank sold securities from that account and applied the proceeds on account of the depositors' indebtedness to it. The Court stated that Continental Bank

---

6. The acknowledged circumstances in this case—such as the clerical errors of Progress' staff and its contact with Kohlmeyer and Selikoff—nonetheless undermine the Commissioner's attempt to ascribe bad faith to Progress.

7. Progress notes that section 503 of the Insurance Act, 40 P.S. § 221.3, excludes from the definition of "General assets" of a company specifically encumbered property necessary to discharge the sums secured thereby.

**1048**

had a perfected security interest in the securities superior to the rights of the attaching creditor bank.

However, that Superior Court decision is not controlling here, where there are important factual differences that show Progress' contentions to be unavailing. For example, that case did not involve, as this case does, the Insurance Act, or an action taken in contravention of a suspension order. It also did not involve the return of collateral to a debtor.[8] Nor did it involve the application to a debtor's account of funds of an entity that was not a debtor. We believe Progress' arguments miss the point that AIBA was not the debtor of Progress on the construction loan. The collateral here was not for a loan to AIBA for which AIBA exchanged value, but, to the contrary, the loan for which the collateral was pledged was strictly a loan to *Sokolow and another company.* Under these circumstances, we must disagree that Progress had a perfected security interest in *AIBA's funds* as to that loan, and reject the notion that Progress, without written authorization from the Commissioner or this Court, could justifiably disburse to Sokolow what it knew to be AIBA's funds, subject to the suspension order.

We thus conclude that the $50,000 sum, plus interest, is properly recoverable by the Commissioner. To that extent, we will therefore grant the Commissioner's motion for summary judgment and deny Progress' motion.

### III.

■ On the remaining cognizable issue, pertaining to the Commissioner's request for a penalty, we are guided by Section 510(f) of the Insurance Act, which provides

---

8. Indeed, in this case Progress turned over to Sokolow the $350,000 sum—including what it knew to be AIBA's funds. Under the Article 9 provision upon which Progress relies, "[a] security interest is perfected by possession from the time possession is taken ... *and continues only so long as possession is retained,* unless otherwise specified in this division." 13 Pa.C.S. § 9305 (emphasis added). We are not presented here with a *default* on the construction loan and so we are not asked to determine what rights Progress had in the collateral in the event of a default.

(f) If any person has violated any order issued under this section[9] which as to him was then still in effect, he shall be liable to pay a civil penalty imposed by the Commonwealth Court not to exceed ten thousand dollars ($10,000).

40 P.S. § 221.10(f). Due to our determination that Progress improperly disbursed $50,000 in AIBA's assets, we are constrained to conclude, even assuming an absence of bad faith on Progress' part, that this statute mandates we impose a penalty. Taking into consideration this provision and all of the circumstances of this case, we decide that a penalty of $1000 is appropriately assessed against Progress.

### CONCLUSION

Accordingly, consistent with this opinion, Progress' amended motion for summary judgment is granted in part and denied in part, and the Commissioner's motion is granted in part and denied in part, so that the recovery from Progress to which the Commissioner is entitled on her complaint is $50,000, plus interest, and a penalty of $1000.

### ORDER

AND NOW, this 1st day of July, 1997, in accordance with the foregoing opinion, it is hereby Ordered that (1) Defendant's amended motion for summary judgment is granted in part, such that judgment is entered in favor of Defendant and against Plaintiff as to Plaintiff's claim for recovery of the sum of $300,000 plus interest; (2) Plaintiff's motion for summary judgment is granted in part, such that judgment is entered in favor of Plaintiff and against Defendant to the extent that Defendant shall pay to Plaintiff $50,000, plus interest on that amount from November 9, 1989 to the date of this Order, as well as

---

Instead, absent a default, Progress essentially took an asset not owned by the debtor and transferred it to the debtor, leaving it to him to decide what to do with it.

9. As previously noted, Section 510(a) of the Insurance Act, 40 P.S. § 221.10(a), authorizes the Commissioner to issue reasonably necessary orders, including orders suspending the business of an insurer.

the sum of $1000; and (3) the motions for summary judgment are otherwise denied.