# United States Court of Appeals
## For the First Circuit

No. 07-1614

MRCO, INC.,

Plaintiff, Appellant,

v.

DORELISSE JUARBE-JIMENEZ,
INSURANCE COMMISSIONER OF PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard and Lipez, Circuit Judges,
and Smith,* District Judge.

Nicholas T. Christakos, Juan H. Saavedra Castro, and Luis M.
Correa Marquez, for appellant.
Iván Díaz de Aldrey and Iván Díaz López, for appellee.

March 27, 2008

---

* Of the District of Rhode Island, sitting by designation.

**SMITH**, **District Judge**.  This diversity action originally was brought by MRCo, Inc.[1] ("MRCo") against Banco Popular de Puerto Rico, Inc. ("Banco Popular").  MRCo later amended its complaint to name the Insurance Commissioner of Puerto Rico ("Commissioner") as an additional defendant.[2]  After MRCo and Banco Popular reached a settlement and all claims between them were dismissed, MRCo moved for partial summary judgment on its claims against the Commissioner.  The district court denied MRCo's motion, and then dismissed the entire case on the ground that MRCo's claims are barred by Puerto Rico law.  This timely appeal followed, and we now consider whether MRCo's claims should be resurrected.

I.   FACTUAL BACKGROUND

Plaintiff-appellant MRCo is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in the District of Columbia.  Former defendant Banco Popular is a banking organization incorporated under the laws of the Commonwealth of Puerto Rico, with its principal place of business in Puerto Rico.  Defendant-appellee Commissioner is the Insurance Commissioner of Puerto Rico, and is

---

[1] The record reflects that MRCo's parent corporation, ULLICO Inc., undertook at least some of the actions that preceded this litigation.  For simplicity, however, we refer to MRCo and ULLICO collectively as "MRCo."

[2] At the time MRCo amended its Complaint, the Commissioner was Fermin Contreras Gómez.  He was succeeded by Dorelisse Juarbe-Jimenez, who replaced him as co-defendant in March 2004.

named solely in her capacity as liquidator of the Plan de Salud de la Federación de Maestros de Puerto Rico ("the Plan")[3]. The Plan is a nonprofit corporation which functions as a health service organization under the Insurance Code of Puerto Rico. See P.R. Laws Ann. tit. 26, §§ 1901 et seq. (2005). The Plan provides insurance coverage to teachers, government employees, and certain private organizations.

In 2000, the Commissioner audited the Plan for the period covering January 1, 1997 through December 31, 1999. As a result of the audit, on October 11, 2000, the Commissioner notified the Plan that there was a shortfall in the latter's assets of approximately $13.2 million. The Commissioner ordered the Plan to identify sufficient assets to cover the shortfall within 90 days. Subsequently, the Commissioner amended his audit report to reflect an actual shortfall of $13,516,725, which amount was confirmed at a hearing before the Commissioner on December 13, 2000. The Commissioner gave the Plan until February 28, 2001 to submit evidence that the shortfall had been covered; otherwise, the Plan would be considered insolvent and placed into liquidation.

With the alleged overt support of the Commissioner the Plan solicited a loan from MRCo, the terms of which called for the Plan to borrow $13,516,725 pursuant to a Surplus Note Agreement

---

[3] Translated, the name is "Health Plan for the Teachers Federation of Puerto Rico."

("Surplus Note"). MRCo and the Plan agreed to establish an escrow account at Banco Popular, with Banco Popular acting as escrow agent, that would be used to disburse the loaned funds to the Plan.

The Surplus Note provided that the loan would be executed and the funds disbursed only after the Plan secured the Commissioner's express written approval of the loan transaction. This condition reflected Puerto Rico's statutory requirement that the Commissioner give prior approval before a surplus loan transaction is entered into by a Puerto Rico insurer. See P.R. Laws Ann. tit. 26, § 2930. On March 21, 2001, in response to the Plan's request for approval, the Commissioner sent to the Plan a letter which stated, in relevant part:

> After evaluating the loan agreement and certificate in the light of Articles 29,300 and 29,310 of the Puerto Rico Insurance Code, we approve them, subject to your submitting the duly signed originals of the loan certificate and agreement with the corporate seal of each corporation.

The letter contained additional requirements, including the submission of a sworn statement by the chairmen of the Plan and MRCo that the loan agreement had been executed and implemented. MRCo alleges that this letter, specifically the portion excerpted above, as well as statements made by the Commissioner, were understood by both MRCo and the Plan to constitute approval of the loan. The Commissioner, on the other hand, alleges that the loan was never approved, and points to an internal file memorandum dated

-4-

April 2, 2001 that the Commissioner claims contemporaneously recorded that the letter expressed only approval of the form of the loan documentation - not approval of the loan itself.

In any event, MRCo and the Plan executed the Surplus Note and accompanying loan certificate on March 26, 2001. On the same date, MRCo entered into an escrow agreement ("Escrow Agreement") with Banco Popular establishing the terms under which the funds would be available and used in accordance with the Surplus Note. MRCo deposited $13,516,725 in the escrow account and, almost immediately, Banco Popular made several disbursements to the Plan, totaling approximately $3.6 million, as well as a payment of $400,000 to itself on behalf of the Plan to cover an overdraft in a Plan bank account, and $5,000 to itself as the fee for acting as escrow agent. After the disbursements, approximately $8.8 million remained in escrow.[4]

On March 30, 2001, only days after the execution of the Surplus Note and Escrow Agreement, the Commissioner filed a sworn petition to the Puerto Rico Court of First Instance (the "Liquidation Court") to place the Plan into liquidation, and

---

[4] The record appears to contain slight inconsistencies as to how much money was disbursed from the escrow account. The precise amounts, whatever they may actually be, are immaterial to our decision. While the Liquidation Court has apparently reserved the precise amount of $3,612,577 until this federal case is concluded, it is enough for the present purposes to record that MRCo is seeking to recover the approximately $3.6 million that was disbursed to the Plan.

declared therein that the Plan had an operating deficit of $13,516,725 (the exact amount of the loan). The Liquidation Court issued an ex parte order provisionally placing the Plan into liquidation, which order was confirmed on May 25, 2001.

After it learned that the Plan had been placed into liquidation, MRCo demanded that Banco Popular return all of the funds remaining in the escrow account. Instead of returning the funds, however, Banco Popular, at the apparent behest of the Commissioner, deposited the remaining funds in escrow in the registry of the Liquidation Court, effectively denying MRCo access to the funds. Also at about the same time, in a filing with the Liquidation Court, the Commissioner stated that he "never gave the approval to the loan transaction, which is a requirement of the Insurance Code for a loan without guarantee of the assets."

On July 3, 2001, MRCo filed its diversity action against Banco Popular in the District of Columbia, alleging that the loan contract was never validly executed, since the Commissioner never approved the transaction as required by Puerto Rico law. Since no loan existed, MRCo alleged, the Plan never acquired any right, title, or interest in any of the funds that had been placed in escrow. Thus, according to MRCo, Banco Popular had a duty to return the funds (the $8.8 million) that had remained in escrow to MRCo. Banco Popular moved to dismiss the case or to change venue

to the District of Puerto Rico.  By order entered October 15, 2001, the case was transferred to the District of Puerto Rico.

Once before the federal court in Puerto Rico, MRCo amended its Complaint to name the Commissioner as an additional defendant.  Banco Popular once again moved to dismiss, arguing that the Commissioner was an indispensable party that could not be added as a defendant because the pendency of the liquidation proceedings precluded any action against the Commissioner as liquidator, pursuant to P.R. Laws Ann. tit. 26, § 4021.  The district court denied the motion on September 9, 2002.  On December 13, 2002, the Commissioner filed an "informative motion" advising the district court of its Resolution and Decision filed with the Liquidation Court that same day, in which the Commissioner concluded that the funds that had remained in escrow at Banco Popular at the time of liquidation were not assets of the Plan and belonged to MRCo.  The Commissioner purported to conclude, as well, that the approximately $3.6 million that was disbursed to the Plan prior to liquidation was an asset of the Plan and therefore part of the liquidation estate, notwithstanding the Commissioner's failure to approve the loan transaction as required.

In response to the Commissioner's acknowledgment that the $8.8 million that had remained in escrow was not an asset of the Plan, MRCo moved the district court to order the transfer of the funds from the Liquidation Court to the district court pursuant to

the district court's removal jurisdiction. The district court ordered the clerk of the Liquidation Court to transfer the $8.8 million, including accrued interest, to the district court, whereupon the funds were paid to MRCo, less amounts paid to resolve a claim against the funds and a sum requested by Banco Popular to cover its claims for escrow agent fees.

Eventually, MRCo and Banco Popular reached a settlement of their claims, and Banco Popular was dismissed from the action. MRCO and the Commissioner, however, continued to litigate over the fate of the $3.6 million that was disbursed to the Plan just prior to the commencement of the liquidation proceedings. The crux of MRCo's claims has always been that the loan to the Plan was never approved by the Commissioner and thus never actually executed. Since it was never executed, asserts MRCo, the loan proceeds never should have been disbursed to the Plan, and never became an asset of the Plan. In the meantime, the Commissioner filed motions on two separate occasions urging the dismissal of MRCo's claims against the Commissioner on the ground that the liquidation proceeding precluded MRCo's claims by operation of 26 P.R. Law Ann. § 4021, the same ground previously argued (unsuccessfully) by Banco Popular. The district court denied both motions.

MRCo moved for partial summary judgment, arguing that no legally cognizable loan had materialized and that, as a result, the approximately $3.6 million disbursed to the Plan prior to

liquidation never actually became an asset of the Plan and should be returned to MRCo. In its opinion and order on February 20, 2007, from which this appeal is taken, the district court denied MRCo's motion on the ground that disputed material facts precluded summary judgment, but also dismissed the underlying claims against the Commissioner on the ground that P.R. Law Ann. tit. 26, § 4021 precluded actions against the Commissioner during the pendency of the proceeding in the Liquidation Court. MRCo's timely appeal followed.

## II. STANDARD OF REVIEW

This court's jurisdiction is limited to final decisions of the district court. 28 U.S.C. § 1291. A district court's order denying a motion for summary judgment is interlocutory and thus, in most cases, not appealable. Fletcher v. Town of Clinton, 196 F.3d 41, 45 (1st Cir. 1999). The order is reviewable, however, if the district court simultaneously enters final judgment in the case. See Swint v. Chambers County Comm'n, 514 U.S. 35, 42-43 (1995). "[A]n order or judgment is usually considered 'final' (hence, appealable) only when it resolves the contested matter, leaving nothing to be done except execution of the judgment." Petralia v. AT&T Global Info. Solutions Co., 114 F.3d 352, 354 (1st Cir. 1997) (quoting Director, Office of Workers' Comp. Programs, United States Dep't of Labor v. Bath Iron Works Corp., 853 F.2d 11, 13 (1st Cir. 1988)). Since the district court's order dismissing all of the

-9-

underlying claims fully disposed of all the parties' claims, we have appellate jurisdiction under § 1291.

In a strict sense, the district court committed itself to three decisions: it (1) denied MRCo's motion for summary judgment; (2) interpreted substantive Puerto Rico law; and (3) dismissed the action based on its interpretation. Each of these are questions of law and thus subject to de novo review. See Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1069 (1st Cir. 1995) ("Appeals involving pure questions of law are generally reviewed de novo."). Because we believe the district court properly dismissed MRCo's claims, we need not reach the issue of whether the district court properly denied MRCo's motion for partial summary judgment inasmuch as the issue is moot.

III. LEGAL ANALYSIS

The district court dismissed MRCo's claims against the Commissioner, finding the claims barred by Article 40.210 of the Puerto Rico Insurance Code ("Article 40.210"). Article 40.210 provides:

> Upon issuance of an order appointing a liquidator of a domestic insurer or of an alien insurer domiciled in Puerto Rico, no action at law shall be brought against the insurer or the liquidator, whether in Puerto Rico or elsewhere, nor shall an action of that nature be maintained or entered after issuance of such order.

P.R. Law Ann. tit. 26, § 4021(1).  On its face, the statute provides that no "action at law" shall be brought or maintained against an insurer or liquidator upon issuance of the order appointing the liquidator.  In arguing that its claims are not barred, MRCo urges us to adopt one of three alternative, though not mutually exclusive, interpretations of the statute.

First, MRCo argues that its claims, being equitable in nature, are not barred by Article 40.210's proscription against "action[s] at law."  But while this construction appears initially to follow reasonably from the plain language of Article 40.210, it does not survive closer examination of the statute.  In its original Spanish, Article 40.210 provides:

> Al emitirse una orden nombrando un liquidador de un asegurador del país o de un asegurador foráneo domiciliado en Puerto Rico, no se radicará ninguna <u>acción judicial</u> contra el asegurador o contra el liquidador, ni en Puerto Rico ni en cualquier otro lugar, ni se mantendrá ni instará una acción de esa naturaleza luego de emitida la orden.

P.R. Law Ann. tit. 26, § 4021(1) (emphasis added).  The widely disseminated English translation of this section contains what is arguably an important error.  While translated as barring "actions at law," Article 40.210 actually and more broadly provides that "ninguna acción judicial" -- "no judicial action" -- may be brought or maintained against an insurer or liquidator after issuance of a liquidation order.  The original Spanish, in other words, makes no

-11-

distinction between actions at law and at equity, as is possibly implied by the translation and argued by MRCo.

Moreover, the bar on all judicial actions comports with our understanding of Puerto Rico legal tradition. While a concept of "equity" is not entirely absent from Puerto Rico law, Anglo-Saxon common law, with its traditional distinction between law and equity, has never been a force in Puerto Rico. See, e.g., Dalmau v. Hernandez Saldana, 3 P.R. Offic. Trans. 678 (1975). It is true that the Puerto Rico Civil Code provides that "[w]hen there is no statute applicable to the case at issue, the court shall decide in accordance with equity." P.R. Laws Ann. tit. 31, § 7. However, the "equity" contemplated by the statute is not that developed through application of the common law, but rather that defined by the Civil Code. Dalmau, 3 P.R. Offic. Trans. 678. This latter conception of equity "means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration." P.R. Laws Ann. tit. 31, § 7. This manifestation is sufficiently amorphous that, even if we permitted MRCo its entreaty to equity, its chance of success on appeal would be uncertain. But in any event, there is no need for us to be sidetracked by this issue because it happens that there is a Puerto Rico statute applicable to this case - Article 40.210 - and that statute quite plainly provides that no judicial action shall be brought or maintained

-12-

against an insurer or liquidator after the issuance of an order appointing the liquidator. In short, MRCo's appeal to equity is a nonstarter.

MRCo next argues that Article 40.210's apparent prohibition of actions against liquidators and insolvent insurers applies only to actions germane to the liquidation proceeding itself, i.e. actions involving creditor claims against the assets of the insurer. As it claims to be seeking recovery only of _its own_ assets, rather than any assets of the Plan, MRCo's position is that the prohibition of Article 40.210 is inapplicable. See, e.g., McDonough Caperton Shepherd Group, Inc. v. Acad. of Med., Cleveland, 888 F.2d 1392 (6th Cir. 1989); Bryant v. United Shoreline Inc. Assurance Servs., N.A., 972 S.W.2d 26 (Tex. 1998); Nova Ins. Group, Inc. v. Florida Dep't of Ins., 606 So.2d 429 (Fla. Dist. Ct. App. 1992).

MRCo's position regarding the application of Article 40.210 to claims involving nonassets may have merit; however, it is not for this or any other court, state or federal, to determine in the first instance what constitutes an "asset" of the Plan, for purposes of the liquidation proceedings. The Puerto Rico Insurance Code provides that, "after a liquidation order . . . the liquidator shall prepare in duplicate a list of the insurer's assets. This list shall be amended or supplemented from time to time, as the liquidator may determine." P.R. Laws Ann. tit. 26, § 4022(1)

(emphasis added).  This provision was interpreted, <u>as it applies to</u> <u>this very case</u>, by the Puerto Rico Court of Appeals in <u>Comm'r</u> v. <u>Plan de Salud de la Federacion de Maestros de Puerto Rico, Inc.</u>, KLCE No. 2001-1111 (June 20, 2002), which arose from a writ of certiorari filed by the Commissioner to review certain resolutions of the Liquidation Court.  The Court of Appeals explained that, while the Liquidation Court must approve any effort by the Commissioner to "sell, transfer, abandon or in any other manner dispose of . . . any property of the insurer," P.R. Laws Ann. tit. 26, § 4018, "it is the competence of the Commissioner to establish which are and, therefore, which are not the assets that constitute the capital of the insurer."  The Plan's appeal was denied and the Commissioner ordered to act "pursuant to the faculties delegated on him by the Insurance Code, one of which is to determine if the $8.8 million form part of the assets of the Plan de Salud de la Federación de Maestros."  Thus, after the <u>Commissioner</u> had determined that the $8.8 million that had remained in escrow never became part of the Plan's assets, the Liquidation Court correctly determined that it lacked jurisdiction over the money and ordered the Commissioner to return the funds to MRCo.[5]

---

[5] We are unaware of any decision by the Puerto Rico Supreme Court involving whether the Commissioner, as statutory liquidator, has the authority to determine what constitutes an "asset" of an insurer in liquidation.  Therefore, we follow the rule laid down in <u>CPC Int'l, Inc.</u> v. <u>Northbrook Excess & Surplus Ins. Co.</u>, 962 F.2d 77, 91 (1st Cir. 1992) (quoting <u>West</u> v. <u>A.T. & T. Co.</u>, 311 U.S. 223, 237 (1940)), that "[w]here an intermediate appellate court

-14-

Thus, we think that MRCo's argument again is ably dispatched by the plain language of the statute, as described above. Even if we do not construe Article 40.210 to apply to every judicial action that conceivably may be brought, here the Commissioner has determined that the $3.6 million still in dispute is to be classified as an "asset" of the Plan, and therefore this case falls within the prohibition of Article 40.210.[6]  Intaco Equip. Corp. v. Arelis Constr., 142 D.P.R. 648 (1997); see also Calderon, Rosa-Silva & Vargas v. Commonwealth Ins. Co., 111 D.P.R. 153 (1981).

MRCo last argues that Puerto Rico cannot, either by statute or judicial fiat, divest the federal court of its jurisdiction.  This argument similarly misses the mark because it is not correct to say, as MRCo suggests, that Puerto Rico has divested the federal court of its subject matter jurisdiction over

---

rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

[6] MRCo cites to Foster v. Progress Fed. Sav. & Loan, 697 A.2d 1043 (Pa. Commw. Ct. 1997) to show that a liquidation court may lack exclusive jurisdiction where, as alleged by MRCo here, funds may have been inadvertently mingled with undisputed assets of an insurer in liquidation. However, Foster is distinguishable because it involved a suit not against a liquidator, but rather by a liquidator against a bank alleged to have violated a suspension order which froze an insurer's accounts.  Id. at 1044.  More importantly, the suit apparently was not brought in the face of a statute precluding any "judicial actions" against the statutory liquidator.

matters such as this. "The jurisdiction of the federal courts - their power to adjudicate - is a grant of authority to them by Congress." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167 (1939). Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority. See, e.g., Goetzke v. Ferro Corp., 280 F.3d 766, 779 (7th Cir. 2002); see also Frink Co. v. Erikson, 20 F.2d 707, 711 (1st Cir. 1927). In this case, the federal diversity statute, 28 U.S.C. § 1332, conferred subject matter jurisdiction on the district court to adjudicate MRCo's claims. Article 40.210 does nothing to affect that grant of jurisdictional authority.

Whether there remains a viable cause of action is another matter. When a federal court exercises diversity jurisdiction, it does so as a neutral forum in which to present state law claims. See Woods v. Interstate Realty Co., 337 U.S. 535, 538 (1949). As such, it must apply applicable substantive state laws to the case before it. See Umsted v. Umsted, 446 F.3d 17, 20 (1st Cir. 2006) (applying Rhode Island substantive law in case premised on diversity jurisdiction); Reyes-Cardona v. J.C. Penney Co., 694 F.2d 894, 896-97 (1st Cir. 1982). Thus, a federal forum, "when invoked on grounds of diversity of citizenship, cannot give that which [the state] has withheld." Angel v. Bullington, 330 U.S. 183, 192 (1947). If state substantive law has denied a plaintiff a cause of

action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted. See Goetzke, 280 F.3d at 779.

In Goetzke, the Seventh Circuit Court of Appeals considered whether a provision of Indiana law, which gave the state worker's compensation board exclusive jurisdiction to determine whether an employer's worker's compensation administrator or carrier "has committed an independent tort in adjusting or settling a claim for compensation," denied the plaintiff the ability to assert a remediable tortious interference claim against his former employer's worker's compensation administrator. Id. at 779. The Court, after holding that the statute did not deprive the district court of its subject matter jurisdiction, held that the statute did not bar the plaintiff's claim because the defendant compensation administrator did not commit the alleged tort "in the context of adjusting or settling a claim for benefits," i.e. the claim did not fall within the purview of the worker's compensation board's exclusive jurisdiction. Id. at 779.

Here, given that Article 40.210 precludes any judicial action from being brought against the Plan or Commissioner, once the Commissioner had been appointed as liquidator, the district court appropriately (if only impliedly) dismissed MRCo's claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), rather than for lack of subject matter jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(1). See, e.g., Goetzke, 280 F.3d at 779 ("If state substantive law has denied a plaintiff a remedy for his cause of action, the district court [sitting in diversity] must dismiss the complaint for failure to state a claim upon which relief may be granted.").

To hold that the district court may entertain MRCo's claims would, in effect, create a cause of action for MRCo that is denied to citizens of Puerto Rico who are unable to invoke the jurisdiction of the federal courts through diversity. That being said, our decision does not strand MRCo without a potential remedy for the wrong it alleges; it simply clarifies that the remedy, if any, lies with the liquidation proceedings rather than in the federal district court. See P.R. Laws Ann. tit. 26, § 4036(2) (providing that after the liquidator denies a claim, the claimant may resort to a review by the Court of First Instance).[7] We must therefore turn back MRCo's appeal and affirm the judgment of the district court.

Affirmed.

---

[7] The Puerto Rico Insurance Code also provides generally for appeals from orders of the Commissioner. See P.R. Laws Ann. tit. 26, § 226.